274 N.J. Super. 585 (1994)
644 A.2d 1132
RHONDA FRANKEL, PLAINTIFF,
v.
LEE FRANKEL, DEFENDANT-APPELLANT, AND ALAN J. CORNBLATT, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted May 3, 1994.
Decided July 8, 1994.
*587 Before Judges BRODY, STERN and KEEFE.
Lee Frankel, appellant, pro se, Jean M. Ramatowski (on the brief).
Alan J. Cornblatt, respondent, pro se, Jayne M. Vogler (on the brief).
BRODY, P.J.A.D.
Defendant appeals from an order denying the parties an uncontested divorce and ordering him to pay $15,000 counsel fees to plaintiff's former attorney. Plaintiff is not participating in the appeal, although her maneuvers created the issues we are called upon to resolve. After tangling in numerous pretrial motions and attempting unsuccessfully to settle their differences through negotiation, the parties finally arrived at a written agreement. They then appeared in court to prove the elements of a separation divorce and to ask the trial judge to incorporate the terms of their agreement in the judgment.
*588 Shortly before the trial date, plaintiff had discharged her attorney, respondent Alan J. Cornblatt, Esq. She thereafter concluded settlement negotiations by agreeing with defendant that each party pay his and her own counsel fees. Defendant had adamantly opposed paying any part of Cornblatt's fee.
As the trial was about to begin, plaintiff disclosed that she had filed a petition in bankruptcy on the previous day. The trial judge and the attorneys, including Cornblatt who was present, spent several hours assessing the impact of plaintiff's bankruptcy on the divorce proceeding. As defendant's attorney saw it, the parties' agreement relieved defendant of any obligation to pay Cornblatt his fee and the bankruptcy reduced Cornblatt to the status of plaintiff's major unsecured creditor. On the other hand, Cornblatt argued that the parties could not by their agreement prevent him from obtaining his fee from defendant.
The judge had two additional concerns. He did not see how he could grant a divorce premised on the agreement if, contrary to its terms, he ordered defendant to pay part of Cornblatt's fee. The judge also concluded that the automatic stay of the litigation of financial matters affecting plaintiff, effective upon the filing of her bankruptcy petition, prevented him from entering a judgment respecting the financial aspects of the divorce, and a New Jersey Supreme Court directive prevented him from bifurcating the trial to enter a judgment of divorce without disposing of all other matters.
After a full airing of these concerns, defendant agreed to waive any objection he might raise to the divorce should he be ordered to pay all or part of Cornblatt's fee. The judge then heard the evidence respecting the divorce with the understanding that he would withhold entry of a judgment until the bankruptcy stay is lifted or, pursuant to the Supreme Court directive, until the Assignment Judge permits bifurcation and entry of a partial judgment of divorce.
The judge then permitted discovery respecting Cornblatt's fee. After the bankruptcy judge lifted the stay solely to allow Cornblatt *589 "to proceed with his application for counsel fees against Lee Frankel," the trial judge ordered defendant to pay Cornblatt $15,000 of his fee. So far as we know, a judgment of divorce has not been entered.[1]
Defendant argues that the trial court erred by ordering him to pay part of plaintiff's counsel fee contrary to the parties' agreement, and also erred by not bifurcating the trial to enter a partial judgment of divorce in view of the automatic stay of the bankruptcy court. We affirm the order requiring defendant to pay part of plaintiff's counsel fee and direct that the trial be bifurcated to enable the trial judge to enter partial judgment of divorce, reserving entry of final judgment respecting other matters until the bankruptcy stay is lifted.

I.
Parties in family actions may agree to pay their own counsel fees. However, where one of the parties is impecunious, they cannot by their agreement prevent that party's attorney from applying to court, pursuant to R. 4:42-9(a)(1), to have his or her fee paid by the other party. The Rule allows a court to award counsel fees in the action:
(1) In a family action, the court in its discretion may make an allowance both pendente lite and on final determination to be paid by any party to the action, including if deemed to be just any party successful in the action, on any claim for divorce. .. .
Although the immediate beneficiary of such an award is the impecunious spouse's attorney, the ultimate beneficiaries are impecunious spouses who otherwise would be unable to attract the services of counsel.
Describing the purpose of the Rule at a time when wives were usually impecunious, the Supreme Court said,
... [I]t is the policy of our law that counsel fees and costs in matrimonial actions are properly the obligation of the husband and he should be compelled to furnish *590 them to the wife. In this respect, counsel fees and costs are not unlike other categories of "necessaries," which the law compels the husband, the usual repository of family finances, to furnish to the wife. [Williams v. Williams, 59 N.J. 229, 233, 281 A.2d 273 (1971).]
Spouses could not by their private agreement prevent a creditor who had furnished necessaries to an impecunious spouse from recovering from the other spouse. The same must be said of spouses who by their private agreement purport to deny the benefit of the Rule to an attorney who has furnished necessary legal services to an impecunious spouse.
It has been held that despite having previously agreed with her spouse to the contrary, a wife may seek counsel fees in a family action. Grobart v. Grobart, 140 N.J. Eq. 401, 402, 55 A.2d 1 (E. & A. 1947); Casteel v. Casteel, 45 N.J. Super. 338, 356, 132 A.2d 529 (App.Div. 1957). Here, plaintiff does not seek counsel fees. Instead, she filed for bankruptcy. Nevertheless, as we have said, the Rule is for the immediate benefit of her attorney and, more important, for the ultimate benefit of impecunious spouses who do not attempt to deprive their attorneys of the value of their services by going bankrupt. We now hold that in a family action an attorney discharged by an impecunious spouse may recover counsel fees from the other spouse even if the spouses have agreed to pay only their own attorney's counsel fees. Accord Heiden v. Ottinger, 245 Ill. App.3d 612, 186 Ill.Dec. 563, 616 N.E.2d 1005, appeal denied, 152 Ill.2d 559, 190 Ill.Dec. 888, 622 N.E.2d 1205 (1993).
We note that attorneys have similar protection under the attorney lien act, N.J.S.A. 2A:13-5, which has been applied to family actions. Rosenfeld v. Rosenfeld, 239 N.J. Super. 77, 78, 570 A.2d 1026 (Ch.Div. 1989). Under the act, a plaintiff's attorney who had commenced an action was able to recover his fee from the defendant who settled without the attorney's knowledge. Ferraro v. City Hall Garage, 94 N.J.L. 209, 211, 109 A. 358 (E. & A. 1920).

II.
Filing a bankruptcy petition operates as an automatic stay of state court actions against the debtor. 11 U.S.C.A. *591 § 362(a)(1) and (3). The stay does not, however, prevent a state court from entering a judgment that does no more than dissolve a marriage:
To summarize, the filing of a bankruptcy petition stays the determination in a divorce case of the interests of the debtor in property of the estate, any exercise of control over such property, and any monetary claims against a debtor other than for alimony, maintenance and support. Other aspects of a divorce case, such as the dissolution of the marriage... are not stayed. [In re Becker, 136 B.R. 113, 116 (Bankr.D.N.J. 1992)]
Thus, the stay did not prevent the trial judge from bifurcating the trial and entering a partial judgment of divorce, reserving entry of final judgment as to financial issues until the stay is lifted.
However, a directive of the New Jersey Supreme Court dated March 3, 1979, prohibits bifurcation in family actions except in rare cases. The directive provides in part:
Bifurcation will be permitted only with the approval of the Assignment Judge, which will not be granted except in the most unusual and extenuating circumstances. [103 N.J.L.J. Index 249]
The reason for the directive is that although bifurcation would allow entry of a partial judgment of divorce thereby enabling the spouses to remarry, "once divorce is granted, there will be much less incentive ... to finalize any other issues." Leventhal v. Leventhal, 239 N.J. Super. 370, 377, 571 A.2d 348 (Ch.Div. 1989).
Here, however, the parties have finalized the other issues. The bankruptcy stay, not their failure to resolve the issues, renders the parties unable to reduce their agreement to judgment. These are "unusual and extenuating circumstances." Where the parties to an action for divorce have resolved all issues by agreement, but a bankruptcy stay prevents the court from entering a final judgment as to all issues, the court may bifurcate the trial and enter a partial judgment of divorce, reserving entry of final judgment as to financial issues until the stay has been lifted.
We are satisfied from a careful review of this record that the other issues raised on appeal are clearly without merit and require no further discussion. R. 2:11-3(e)(1)(E).
*592 The order directing defendant to pay counsel fees to plaintiff's former attorney is affirmed. The matter is remanded for bifurcation of the trial so that the trial judge may enter a partial judgment of divorce, reserving entry of final judgment as to other issues until the bankruptcy stay is lifted.
NOTES
[1] We permitted this appeal to proceed even though it may be interlocutory.